[No. 9453  Department One.  June 8, 1911.]

JOHN O. COOPER, *Respondent*, v. R. J. FISHER *et al.,*
*Appellants.*[1]

SALES—MINING STOCK—FALSE REPRESENTATIONS—EVIDENCE—SUFFICIENCY. A husband having purchased mining stock for the benefit of himself and wife, they cannot claim that the sale was induced by false representations as to the value and title of the company's "mines," where it appears that he was an officer of the corporation, knew that the title was· held· by another in trust, had employed a practical mining man to make a report on the property, and claims to have relied upon a prospectus of the company which showed that the "mines" were only undeveloped mining prospects which were at that time in good faith believed to be valuable.

Appeal from a judgment of the superior court for King county, Albertson, J., entered September 19, 1910, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action on contract. Affirmed.

*Hastings & Stedman,* for appellants.

*Byers & Byers,* for respondent.

[1]Reported in 115 Pac. 1041.

. GOSE, J.—This suit was brought to recover the balance due upon the following written instrument executed by the defendant husband in favor of the plaintiff:

                    .     ·          "Seattle, Wash., Aug. 20, 1907.
"Received from R. J. Fisher, the sum of five hundred (500) dollars to account of purchase price of one hundred thousand (100,000) shares of stock of the British Yukon Copper & Silver Mining Company at the price of five (5) cents per share, the balance of purchase price to be paid on or before two years from date. It is understood that the above one hundred thousand shares of stock is part of the original stock issued by the above described corporation to John O. Cooper, and the balance of the purchase price is to be paid to John O. Cooper.
                    "(Signed)          John O. Cooper,
                                        "R. J. Fisher."

There was a judgment for the plaintiff. The defendants have appealed.

The appellants admit the execution of the instrument set forth, and seek to defeat its enforcement on the ground that it was obtained by means of fraud. The answer alleges affirmatively that the respondent represented that the British Yukon Copper & Silver Mining Company, a Washington corporation, was the owner of, and had title to, three valuable mines, situated in the Atlin mining district, in the province of British Columbia; that large mineral deposits had been discovered therein; that the appellants in executing the writing relied upon such representations; that the representations were false; that the corporation did not own or have title to the mines; that they were not valuable; "and that said shares of stock were not then, and at no time have been, of any value whatsoever, and that there was no consideration moving to the defendant for the making of said agreement."

The court found that the mining claims were held in the name of the respondent in trust for the corporation; that the appellant husband, at the time of the sale and at all times thereafter, knew of that fact; that they were so held on ac-

count of the expense incident to a transfer to the Washington corporation; that the appellant husband acquiesced in such holding; that he was elected as president and trustee of the corporation about a month before he purchased the stock; that he accepted such offices and continued to exercise the duties thereof until September 30, 1908, when he presented his resignation to the board of trustees; that during his official service, he had free access to the books and records of the corporation; that shortly after purchasing the stock, he employed a practical mining man to examine and report upon the property; that he made a favorable report as to its value, by letter dated August 29, 1907; that on October 24, 1907, the appellant addressed a letter to him, requesting him to make an adverse report on the property, and stating that "the reason that I am writing this is that we have been trying to buy some stock back, and word has come from Atlin that every one is talking about the fine property we have there, and it has been impossible, even after securing an option on stock, to purchase the same;" that the expert, in compliance with the request, on the 10th day of November, 1907, made an unfavorable report on the mine; that during the official service of the appellant, the capital stock was on the market with his knowledge; that he advised the purchase of the stock; that the contract was made for the benefit of the community; and that the respondent made the sale in good faith.

These findings are fully supported by the evidence. The appellants paid $500 on the purchase price of the stock at the time the contract was signed, $200 on September 24, and $200 on February 26, 1908. The stock was issued to the appellant husband on August 1, 1907, six days before the formal contract was signed, and was retained by him until the close of the trial, when he tendered it in court. He testified that, in purchasing the stock, he relied upon the information contained in the prospectus which the corporation had issued. For a document of its nature it is singularly modest. It refers to the property as "three claims," desig-

nating them by name. It further states that the assessment work has been done, and that the "mining claims" are ready "to be crown granted;" that the company desires "to continue the development of this property;" that "the development work on the group consists of open cuts and shallow shafts at various places. The most extensive of these is a shaft forty feet deep on the Dundee claim." It also sets forth in detail the accessibility of the claims to water transportation, the cost of shipping, and the cost of smelting the ore. These facts are not denied.

It is apparent from the record that the appellants knew that they were purchasing stock in a mining prospect. The prospect was considered good by all the parties, and they in good faith believed that it would, when developed, be a valuable property. Bills of sale for the claims had been executed, and were held by the secretary of the corporation at the time the appellants purchased the stock. The case of *Archibald v. Hahn*, 53 Wash. 602, 102 Pac. 636, relied upon by the appellants, has no application to the facts in the case at bar. In that case it was evident that the vendor knowingly sold worthless stock by fraudulently representing it to be valuable.

During the progress of the trial it developed that the respondent had conveyed his interest in the claims to a British Columbia corporation. He testified, however, that he had reserved fifty-one per cent of the stock for the benefit of the stockholders of the old corporation when they "got together and arranged this, but that has never been done." Both corporations, the old and the new, were capitalized for the same amount—$1,000,000. Counsel for the appellants, in response to a remark of the court at the close of the trial that the contract could not be rescinded without an offer to return the stock, stated: "We will tender it back in open court. The reason why it has not been tendered is because the corporation went into the hands of a receiver and became defunct, and it is hardly worth its price as waste paper." The

assets of the corporation had been sold at a receiver's sale in this state before the conveyance of the claims to the British Columbia corporation. In their answer and throughout the trial, as we have seen, the appellants contended that the stock was without value. Their contention was probably true at the time of the trial. In view of that fact, they have not been injured by the conveyance to the foreign corporation. However, so far as the record discloses, they can exchange their stock for a like amount of stock in the foreign corporation.

The judgment is affirmed.

DUNBAR, C. J., MOUNT, PARKER, and FULLERTON, JJ., concur.